UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FT. LAUDERDALE DIVISION

CASE NO.: 0:23-cv-60780-BB

CREELED, INC.,

        Plaintiff,

v.

THE INDIVIDUALS, PARTNERSHIPS AND
UNINCORPORATED ASSOCIATIONS
IDENTIFIED ON SCHEDULE "A",

        Defendants.

**MEMORANDUM OF LAW IN OPPOSITION TO
MOTION FOR TEMPORARY RESTRAINING ORDER[1]**

**Preliminary Statement**

Defendant SellerX One Ltd. d/b/a H&S Alliance UK Ltd. ("SellerX")[2] hereby submits this memorandum of law, accompanied by the supporting declarations of Philipp Triebel and Joel H. Rosner, Esq., in opposition to any further injunctive relief freezing the assets of SellerX's Amazon business. The asset freeze imposed by the TRO issued in this matter is disproportionately harming SellerX, as its monthly revenue on Amazon, from 61 products unrelated to the accused product, is more than 80 times the amount of revenue from SellerX's sales of the accused product.

---

[1] Defendant SellerX One Ltd., to its knowledge, has not yet been served with the Summons, Complaint, or any other papers in this matter. Accordingly, SellerX is appearing in this matter solely for the limited purpose of submitting this opposition brief in response to the Court's Order (ECF 15) directing parties to submit an opposition to avoid the continuation of the injunctive relief imposed by the temporary restraining order (ECF 9). SellerX does not by this submission waive, and does not intend to waive, any defense it may have, including but not limited to lack of personal jurisdiction, failure to timely and properly effectuate service of process, among others.

[2] Defendant No. 23 on Schedule A to the Complaint. (ECF 6-1, at 2.)

The Court ordered the asset freeze as part of the Court's temporary restraining order because, "[u]nder 15 U.S.C. § 1117(a), the Plaintiff may be entitled to recover, as an equitable remedy, the illegal profits gained through the Defendants' distribution and sales of goods bearing counterfeits and infringements of the CreeLED Marks." As the total amount of SellerX's gross U.S. sales of the accused product is less than $500, and as SellerX has offered to post $2,000 with the Court as reasonable security, there is no need for a further freeze of SellerX's revenues generated on Amazon.

## Facts

1. SellerX's total United States sales of the accused flashlight product are $470.55. (Declaration of Philipp Triebel, dated May 19, 2023, and attached as Exhibit A ("Triebel Decl."), ¶ 5.)

2. SellerX currently has 61 other products for sale on Amazon in the United States. (*Id.* ¶ 2.)

3. Seller's United States sales on Amazon each month average about $40,000 per month. (*Id.* ¶ 3.)

4. As of yesterday, $15,000 has been frozen in SellerX's Amazon account. (*Id.* ¶ 4.)

5. The accused flashlight is the only product sold by SellerX that made reference to using Cree components. (*Id.* ¶ 6.)

6. SellerX is not aware of having been served by Plaintiff with the Summons, Complaint, or any other papers in this action. (*Id.* ¶ 7.)

7. Upon learning of this lawsuit,[3] SellerX's New York counsel wrote to Plaintiff's counsel on May 10, advising that SellerX's total United States sales of the accused flashlight product—accused because a product listing on Amazon referred to a Cree component—were less than $500 and that the listing for the accused product had been disabled by Amazon. (Declaration of Joel H. Rosner, dated May 22, 2023, and attached as Exhibit B ("Rosner Decl."), ¶ 5.)

8. SellerX's New York counsel also advised Plaintiff's counsel that the asset freeze directed by the TRO issued in this case is causing disproportionate harm to SellerX, as its Amazon store sells a large number of unrelated products for which Plaintiff has no conceivable claim, and the store generates about $10,000 a week in sales. (*Id.* ¶ 6.) Thus, an asset freeze would—and since then has—quickly outstrip any available damages in this case and hold funds indisputably owed to SellerX. (*Id.*)

9. SellerX's New York counsel therefore asked Plaintiff's counsel either to settle the action for the gross U.S. sales of the accused product, i.e., about $500, or, if this lawsuit were to continue, to agree to lift the TRO as to SellerX, in exchange for which SellerX would: (a) stipulate not to resume selling the accused product during the pendency of this lawsuit; and (b) to post reasonable security of $2,000—four times the amount of total sales of the accused product—with the Clerk of the Court to cover the potential damages. (*Id.* ¶ 7.) (SellerX's New York counsel offered in either instance to provide a sworn statement concerning the sales along with the Amazon sales records.) (*Id.*) SellerX's New York counsel also noted that, should SellerX have to file papers with the Court, it intended to request that the TRO bond be significantly increased to cover the potential damage to SellerX. (*Id.*)

---

[3] It is our understanding that Amazon notified SellerX of the existence of this lawsuit, although it did not provide SellerX with any papers concerning it.

10. Plaintiff's counsel refused to accept the proposed payment and refused to agree to modify or lift the TRO in any meaningful way. (*Id.* ¶ 8.)  In fact, he stated that it was Plaintiff's intent, unless SellerX paid Plaintiff an amount far in excess of the $500 in total sales at issue, to use this case to conduct discovery about other products, not at issue in this lawsuit, to find out whether Plaintiff can bring other infringement claims against SellerX. (*Id.*)

## Argument

## THE ASSET FREEZE SHOULD BE LIFTED

"'The general federal rule of equity is that a court may not reach a defendant's assets unrelated to the underlying litigation and freeze them so that they may be preserved to satisfy a potential money judgment.'" *Rosen v. Cascade Int'l, Inc.*, 21 F.3d 1520, 1527 (11th Cir. 1994). But, in cases where a plaintiff seeks "the equitable remedy of receiving [defendant's] profits from counterfeiting under 15 U.S.C. § 1117," the Court has "the authority to freeze those assets which could have been used to satisfy an equitable award of profits." *Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 987 (11th Cir. 1995).  The Court relied on that authority in issuing the TRO in this case, holding that it was ordering an asset freeze because, "[u]nder 15 U.S.C. § 1117(a), the Plaintiff may be entitled to recover, as an equitable remedy, the illegal profits gained through the Defendants' distribution and sales of goods bearing counterfeits and infringements of the CreeLED Marks." (ECF 9, at 5.)

Here, as SellerX's gross U.S. sales of the accused flashlight are $470.55, its profits from such sales cannot exceed that amount.  SellerX is willing to deposit cash or post a bond with the Court in the amount of $2,000, i.e., more than four times the gross sales of the accused product.  Hence, no further asset freeze is required.

Conversely, continuing an asset freeze would impose disproportionate harm on SellerX, as it would freeze revenues from the 61 unrelated products that SellerX sells on Amazon in the United States. Those products bring in an average of $40,000 in revenue each month, an amount that is 80 times the amount of SellerX's gross sales revenue from the accused flashlight product. At least $15,000—30 times the gross sales of the accused flashlight product—is already restrained in SellerX's Amazon account, and the amount is growing on a daily basis, causing harm to SellerX's business. Plaintiff has no conceivable claim against those revenues, which come from products that are not at issue in this lawsuit. Moreover, Plaintiff is improperly using the asset freeze for a purpose not authorized by the Court, namely, leveraging a large settlement from SellerX that far exceeds even the gross sales of the accused flashlight product.

WHEREFORE, SellerX respectfully requests that the Court modify and/or dissolve the TRO, lift the asset freeze as to SellerX and deny Plaintiff's request for any further injunctive relief, together with such other and further relief as seems reasonable to the Court. Alternatively, and only in the event that the Court does not otherwise modify or dissolve the TRO as to SellerX, then to increase Plaintiff's bond to provide sufficient security for the irreparable harm it continues to cause.

Dated: May 23, 2023                     Respectfully submitted,

By: /s/ Jeffrey A. Backman
Jeffrey A. Backman
Bar No. 662501
**GREENSPOON MARDER LLP**
200 East Broward Boulevard, Suite 1800
Fort Lauderdale, Florida 33301
Telephone: (954) 491-1120
Email: jeffrey.backman@gmlaw.com
Email: Alyson.mercier@gmlaw.com
Email: Jessica.serrano-cartagena@gmlaw.com

and

**TARTER KRINSKY & DROGIN LLP**
Joel H. Rosner
NY Bar No. 4359808
PA Bar No. 321695
(*pro hac vice application to be filed forthwith*)
1350 Broadway, 11th Floor
New York, New York 10018
Tel (212) 216-8000
Fax (212) 216-8001
Email: jrosner@tarterkrinsky.com

*Attorneys for Defendant SellerX One Ltd.*
*d/b/a H&S Alliance UK Ltd.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on May 23, 2023, the foregoing was electronically filed with the Clerk of Court using the CM/ECF system, which will send notice of filing and a service copy to all counsel of record.  In addition, the undersigned counsel affirms that a copy of this Opposition was served on counsel for Plaintiff at least 48 hours prior to the hearing scheduled for May 25, 2023 at 9:30 a.m. via Email at jsobrado@brickellip.com and rweaver@brickellip.com.

 /s/ Jeffrey A. Backman
 Jeffrey A. Backman