# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

### Case No. 23-cv-60780-BLOOM/Valle

CREELED, INC.,

    Plaintiff,

v.

THE INDIVIDUALS, PARTNERSHIPS AND
UNINCORPORATED ASSOCIATIONS
IDENTIFIED ON SCHEDULE "A,"

    Defendants.

                                          /

## ORDER ON MOTION TO DISSOLVE PRELIMINARY INJUNCTION

**THIS CAUSE** is before the Court on Defendants Binwo Smart Home ("Binwo"), CraBow, Phixtonus, and yinghuatiyu's (collectively, "Defendants") Motion to Dissolve the Preliminary Injunction and the Temporary Restraining Order, ECF No. [88] ("Motion"). Defendants filed a Memorandum of Law in Support of Motion to Dissolve, ECF No. [88-1], and the Declarations of Yingbin Li, Xinyi Yu, Qiaoli Zhou, and Hong Xie. ECF Nos. [88-2] – [88-5]. Plaintiff CreeLED, Inc. filed a Response in Opposition to the Motion, ECF No. [108], and attached the Declarations of David Marcellino, ECF No. [108-1], and Javier Sobrado, ECF No. [108-2], and correspondence with Binwo and Phixtonus, ECF Nos. [108-3], [108-4]. Defendants filed a Reply Memorandum of Law in Further Support of the Motion, ECF No. [115], and attached additional Declarations from Xinyi Yu, Qiaoli Zhou, Hong Xie, and Yingbin Li. ECF Nos. [115-1] – [115-4].

The Court has reviewed the Motion, the Response, the Reply, the Declarations, the record in this case, the applicable law, and is otherwise duly advised. For the reasons that follow, the Motion is denied.

Case No. 23-cv-60780-BLOOM/Valle

## I. BACKGROUND

Plaintiff filed a Complaint on April 27, 2023 alleging Trademark Counterfeiting and Infringement Pursuant to § 32 of the Lanham Act (15 U.S.C. § 1114) (Count I), False Designation of Origin Pursuant to § 43(a) of the Lanham Act (15 U.S.C. § 1125(a)) (Count II), Common Law Unfair Competition (Count III), and Common Law Trademark Infringement (Count IV). ECF No. [1] ¶¶ 44-68. Pertinent here, Plaintiff filed an *Ex Parte* Motion for Temporary Restraining Order, Preliminary Injunction and Order Restraining Assets. ECF No. [6] ("Preliminary Injunction Motion").

Upon review of Plaintiff's submissions, the Court determined that Plaintiff is the owner of federally registered trademarks ("Marks"). ECF No. [33] ("Preliminary Injunction Order" or "Order") at 2 (citing ECF No. [6-3] ("Jan. 13, 2023 Marcellino Decl.") Schedule B). The Court also made the following determinations. The 347 individuals, partnerships, and unincorporated associations that are identified on Schedule "A" of the Complaint ("Merchants"), ECF No. [6-1], were not authorized to use the Marks for any purpose, yet they sold goods using the Marks through their respective Seller IDs at e-commerce stores and commercial websites. *Id.* at 3 (citing Jan. 13, 2023 Marcellino Decl. ¶ 11; ECF No. [6-4] ("May 2, 2023 Sobrado Decl.") ¶ 4). Merchants' goods were nongenuine, unauthorized versions of Plaintiff's products that bear the Marks. *Id.* (citing Jan. 13, 2023 Marcellino Decl. ¶¶ 11-14). Plaintiff suffers irreparable harm and damage by Merchants' use of the Marks in that their use drives customers to their Seller IDs, harming Plaintiff's goodwill and causing it direct monetary loss. *Id.* at 3 (Jan. 13, 2023 Marcellino Decl. ¶¶ 15-18). The Court concluded that Plaintiff has a strong probability of proving at trial that consumers are likely to be confused by the Merchants' use of the Marks. *Id.* at 4. The Court further concluded there was good cause to believe more counterfeit and infringing products bearing the Marks would appear in the marketplace, that consumers would likely be misled by those products, and that Plaintiff would

suffer loss in sales and marketplace erosion. *Id.* at 5. Moreover, the Court found the balance of potential harm to Merchants was far outweighed by the potential harm to Plaintiff's reputation and goodwill, and that the public interest favored issuance of the Preliminary Injunction because the protection of the Marks encourages respect for the law and protects the public from being defrauded by the unlawful sale of counterfeit goods. *Id.* at 5.

The Court thereafter granted the Preliminary Injunction Motion on May 26, 2023. The Preliminary Injunction Order restrained and enjoined Merchants, including Defendants, from selling or otherwise disposing of any products bearing the Marks. *Id.* at 6-7. The Order further ordered Merchants to discontinue use of the Marks immediately in connection with internet-based e-commerce stores and restrained them from transferring their Seller IDs during this action's pendency. *Id.* at 7. The Order further directed third-party financial institutions and others to restrain the transfer of any funds connected with Merchants. *Id.* at 8. Moreover, the Order allowed the Merchants to petition the Court to modify the Order. *Id.* at 8.

On June 30, 2023, the Defendants filed the instant Motion. First, Defendants contend Plaintiff has provided little evidence on the likelihood of confusion. ECF No. [88-1] at 3-8. Second, Defendants argue their use of certain Marks is protected by nominative fair use because Defendants employed the Marks to truthfully advertise that their products contain genuine CreeLED microchips. *Id.* at 1, 8-10. Third, Defendants assert Plaintiffs failed to meet their burden of demonstrating that a preliminary injunction is warranted. Specifically, Defendants contend that Plaintiff had the burden of showing (1) a substantial likelihood of success on the merits, (2) irreparable injury will be suffered unless an injunction issues, (3) the threatened injury to Plaintiff outweighs any damages the injunction may cause an opposing party, and (4) the injunction would

not be adverse to the public interest. ECF No. [88-1] at 10. Defendants reason Plaintiff cannot meet its burden on any factor. *Id.* at 10-14.

Defendants admit that they used some of the Marks. Specifically, yinghuatiyu used the "CREE" word mark in a large banner image on its Amazon product listing, ECF No. [88-2] ¶ 13; Binwo used the "CREE" and "XML" word marks on its Amazon product listing, ECF No. [88-3] ¶ 13; CraBow used the "XML" word mark on its Amazon product listing, ECF No. [88-4] ¶ 13; and Phixtonus used the words "XM L2" on its Amazon product listing, ECF No. [88-5] ¶ 13. Moreover, the Declarations uniformly state that each Defendant "purchased authentic chips made by CreeLED from authorized distributors and resellers of Cree products in China, including Shenzhen Meihong Electronics Co., Ltd. and Arrow Electronics China Limited." ECF No. [88-2] ¶ 7; ECF No. [88-3] ¶ 7; ECF No. [88-4] ¶ 7; ECF No. [88-5] ¶ 7.

In support, Defendants attached Declarations and what appear to be supply or purchase contracts for purportedly genuine CreeLED products.[1] Each Declaration includes a one-page translation of a certificate and a purported Chinese language original. The translation of the certificate states Arrow Electronics China Limited ("Arrow") sold CreeLED components to Shenzhen Meihong Electronics Co., Ltd. ("SMEC") that are original and authentic. *See, e.g.*, ECF No. [88-2] at 10-11. Each Declaration also appears to attach copies of two supply contracts dated March 31, 2023. *See, e.g.*, ECF No. [88-2] at 5-12. According to translations in the record, one supply contract dated March 31, 2023 memorializes a transaction from SMEC to Buyer Ningbo Anhui Optoelectronics Co., Ltd. ("Optoelectronics") and relates to the sale of 5,000 units of

---

[1] Many of the documents appended to the Declarations are written in a foreign language and other documents are either purported translations of some of those documents or certifications for those translations.

"CREE LED XMLBWT." *See, e.g.*, ECF No. [88-2] at 5. Another March 31, 2023 supply contract is from Seller Optoelectronics to Buyer Ninghai Sanzhong Electric Appliance Co. ("Sanzhong Electric") for 5,000 units of "CREE LED XMLBWT." *See, e.g.*, ECF No. [88-2] at 12. Defendant yinghuatiyu appends to the Declaration of its counsel untranslated copies of a three supply contracts dated June 2, 2023; June 28, 2023; and June 29, 2023. ECF No. [88-2] at 13-15 ("June 2023 Supply Contracts"). yinghuatiyu's June 2023 supply contracts relate to the sale of a product named "CREE LED XHP70B." *See id.* The Declaration of counsel for Binwo appends an untranslated copy of what appears to be a supply contract dated January 6, 2023. ECF No. [88-3] at 14. The Declaration of counsel for CraBow appends an untranslated copy of what appears to be a supply contract dated January 5, 2023. ECF No. [88-4] at 15. The Declaration of counsel for Phixtonus appends documentation that is ostensibly of a purchase contract dated January 17, 2023 from Seller Sanzhong Electric to Buyer Phixtonus for 1,500 units of "T04/CREE XML L2." ECF No. [88-5] at 14.

Plaintiff responds that Defendants have filed an untimely motion that fails to establish a change in factual circumstances that justifies the preliminary injunction's dissolution. ECF No. [108] at 10-13 (citing *CWI, Inc. v. LDRV Holdings Corp.*, No. 13-CV-93-T-35, 2013 WL 12123229, at *2 (M.D. Fla. Oct. 16, 2013)). For the exception of the June 2023 supply contracts, Plaintiff argues Defendants' new evidence existed prior to the preliminary injunction hearing and cannot constitute a "change" in circumstances justifying a grant of the Motion. ECF No. [108] at 10. As for yinghuatiyu's evidence of the June 2023 supply contracts, Plaintiff asserts that evidence is at best a subsequent remedial measure that does not bear on yinghuatiyu's past conduct and is fabricated evidence at worst. *Id.* Moreover, Plaintiff contends SMEC is not an authorized CreeLED

5

distributor and that, even if the CreeLED products that SMEC sells are traceable to an originally authorized first sale by Plaintiff, Defendants fail to provide that tracing evidence. *Id.* at 11.

Defendants reply that a change in circumstances exists in at least two respects. First, they have removed all text and imagery that potentially bears any resemblance to any of the Marks on their Amazon product listing pages. ECF No. [115] at 2. Defendants submit that the removal of such text and imagery "removes any basis" for Plaintiff's claim of irreparable injury. *Id.* Second, Defendants reason that the filing of new evidence constitutes a change in circumstances. *Id.* Defendants further reply that they have submitted evidence establishing that their supply chain is legitimate. *Id.* at 3-4. Specifically, Defendants assert that Arrow is a legitimate source of CreeLED microchips, and since Arrow supplies SEMC, any subsequent resales of products containing those microchips do not constitute trademark infringement. *Id.* at 3-4. Defendants address Plaintiff's arguments concerning the nominative fair use doctrine, sharply disagree that their motion is untimely, and rehash their arguments concerning consumer confusion. *Id.* at 4-9.

## II. LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure Rule 60, courts may grant relief from a final judgment or order based upon a variety of specifically enumerated reasons. *See* Fed. R. Civ. P. 60(b). Relevant here, Rule 60(b)(5) provides that a court may relieve a party from an order where "applying [the order] prospectively is no longer equitable[.]" *See* Fed. R. Civ. P. 60(b)(5). Under Rule 60(b)(5), a party seeking relief from a court order bears the burden of establishing that a significant change in circumstances—i.e., in "factual conditions" or in law—justifies modifying the order. *See Rufo v. Inmates of Suffolk Cnty. Jail*, 502 U.S. 367, 383-84 (1992) (stating that a party seeking modification of a consent decree under Rule 60(b)(5) "bears the burden of establishing that a significant change in circumstances warrants revision of the decree"); *see also Horne v. Flores*, 557 U.S. 433, 447 (2009) ("Rule 60(b)(5) . . . provides a means by which a party

can ask a court to modify or vacate a[n] . . . order if 'a significant change either in factual conditions or in law' renders continued enforcement 'detrimental to the public interest.'"). "Modification of an injunction is proper only when there has been a change of circumstances between entry of the injunction and the filing of the motion that would render the continuance of the injunction in its original form inequitable." *VPR Brands, LP v. Shenzhen Weiboli Tech. Co.*, No. 22-81576-CIV, 2023 WL 3600666, at *2 (S.D. Fla. Apr. 19, 2023) (quoting *CWI, Inc. v. LDRV Holdings Corp.*, No. 13-CV-93-T-35, 2013 WL 12123229, at *2 (M.D. Fla. Oct. 16, 2013) (quoting *Favia v. Ind. Univ. of Pa.*, 7 F.3d 332, 337 (3d Cir. 1993)).

### III. DISCUSSION

Defendants seek dissolution of the preliminary injunction, requesting the Court revisit its merits determinations under Rule 65. However, Rule 60 supplies the applicable legal standard on a motion to modify or vacate a preliminary injunction. *See* Fed. R. Civ. P. 60(b) ("On motion and just terms, the court may relieve a party . . . from a[n] . . . order . . . for the following reasons: . . . (5) . . . applying [the order] prospectively is no longer equitable"). Defendants do not alert this Court to a change in law, so the Motion must demonstrate a significant change in "factual conditions" following the Court's entry of the Order that justifies vacating the order. *See VPR Brands*, 2023 WL 3600666, at *2. Thus, the question is whether any inequities have arisen on account of a change in factual conditions. *See Favia*, 7 F.3d at 338 ("A motion to modify a preliminary injunction is meant only to relieve inequities that arise *after* the original order") (emphasis added). Alternatively, the inquiry turns on whether there is a change in factual conditions that renders continued enforcement detrimental to the public interest. *Horne*, 557 U.S. at 447.

Defendants first argue that their removal of the Marks from their Amazon stores is a change of circumstances because it undercuts Plaintiff's claim to irreparable harm. That argument amounts

7

to an assertion that Defendant's compliance with the Preliminary Injunction Order renders the restraints inequitable. The Court is not persuaded. In the Preliminary Injunction Order, the Court determined that the balance of harm favored imposition of an injunction. ECF No. [33] at 5. Requiring compliance with the law is fair, so an order requiring Defendant's continued compliance with the law is not inequitable. Moreover, Defendant's present compliance with U.S. trademark law provides no assurance that Defendants will continue behaving lawfully and, in any event, does not alter the Court's determination that the balance of harm favors imposing a Preliminary Injunction.[2] Further, continuation of the Preliminary Injunction is not detrimental to the public interest because the Preliminary Injunction promotes respect for the law and prevents the public from being defrauded by the illegal sale of counterfeit goods.

Defendants next argue that its "new evidence" constitutes a change in circumstances because—even though the evidence was in existence at the time of the preliminary injunction hearing—that evidence is "still new in the sense that it was not before the Court until now."[3] However, one court in this district has stated that evidence in existence at the time a court issued a preliminary injunction does not represent a change in factual circumstances. *See VPR Brands*, 2023 WL 3600666, at *2. Other courts are in accord. *See, e.g.*, *Favia*, 7 F.3d at 338 (finding that certification of class at the time of entry of injunction was not a change in circumstances occurring after the entry of injunction); *Merrell-Nat'l Lab'ys., Inc. v. Zenith Lab'ys., Inc.,* 579 F.2d 786, 792 (3d Cir. 1978) (affirming denial of motion for redetermination where there was no evidence of

---

[2] As the Court found in the Preliminary Injunction Order, there is a risk that more counterfeit and infringing products bearing the Marks would appear in the marketplace. ECF No. [33] at 5.
[3] To the extent yinghuatiyu offers the copies of documents dated June 2, 2023, June 28, 2023, and June 29, 2023, as evidence of a change in circumstances following entry of the Order, the Court cannot evaluate those copies to determine whether they evidence a change in circumstances because the copies are not translated. ECF No. [88-2] at 13-15.

changed circumstances and defendants' "new" facts could have been produced in the original motion for an injunction).

To the extent Defendants argue that their retention of counsel after entry of the Preliminary Injunction Order represents a change in circumstances, that argument is not supported by legal authority. The Supreme Court in *Rufo* explained a party may obtain relief from a court order when it is no longer equitable to compel compliance with that order. *Rufo*, 502 U.S. at 383. As noted, the Court determined the balance of potential harm to Defendants here is far outweighed by the potential harm to Plaintiff and that the public interest favored issuance of the Preliminary Injunction. Defendants' choice to litigate this action once the Court entered the Preliminary Injunction does not alter the Court's past determination. Although Defendants now challenge that determination, they may not relitigate the court's findings. *See Favia*, 7 F.3d at 340 (explaining that defendant could not relitigate preliminary injunction because defendant had opportunity to challenge district court's determination that plaintiff class was likely to succeed on the merits by appealing injunction but elected not to do so).

The foregoing demonstrates that Defendants cannot distinguish this case from *CWI*. In *CWI*, the court found the counter-defendant offered no evidence of a change in circumstances. *CWI*, 2013 WL 12123229, at *3. Here, the Court has also determined that Defendants have offered no new evidence of a change in circumstances. Moreover, that the counter-defendant in *CWI* participated in the preliminary injunction hearing and Defendants did not do so here is beside the point.

Defendants' other arguments address whether Plaintiff has shown a likelihood of success on the merits. However, as the Court has noted, a motion to dissolve a preliminary injunction may

Case No. 23-cv-60780-BLOOM/Valle

not be used as a vehicle to seek the Court's reconsideration of the Order. The Motion must therefore be denied.

IV. **CONCLUSION**

Accordingly, it is **ORDERED AND ADJUDGED** that Plaintiff's Motion, **ECF No. [88]**, is **DENIED**.

**DONE AND ORDERED** in chambers at Miami, Florida, on August 7, 2023.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record